Donald **LINDSEY** et al., Plaintiffs,

v.

Dorothea M. **NORMET** et al., Defendants.

Civ. No. 70–8.

United States District Court,
D. Oregon.

Sept. 10, 1970.

John H. Clough, Joseph Morehead, Legal Aid, Portland, Or., for plaintiffs.

Thomas J. Lekas, Theodore Jensen, Portland, Or., for Dorothea Normet.

S. M. Suwol, Portland, Or., for Dorothy Brauser.

W. M. Martin, Portland, Or., for Housing Authority of Portland, G. W. Rossman.

Frank Whitaker, Portland, Or., for Don Timmons.

Robert Allen, Portland, Or., for Richard McGowan.

John Osburn, Atty. Gen., Salem, Or., for State of Oregon.

Before KILKENNY, Circuit Judge, and SOLOMON and GOODWIN, District Judges.

## OPINION

ALFRED T. GOODWIN, District Judge:

This class action was brought to enjoin the enforcement in state courts of Oregon's Forcible Entry and Wrongful Detainer Law (ORS 105.105 to 105.160). Because plaintiffs assert unconstitutionality and demand an injunction, a three-judge court was convened under 28 U.S.C. § 2281.

The plaintiffs are tenants who, because of their poverty, are unable to obtain housing except in rental units that for various reasons are not satisfactory to them. After protesting the condition of their housing, some of the plaintiffs began to withhold the payment of rent. When the landlords commenced statutory proceedings to collect the rent or to evict the tenants, the plaintiffs sued to enjoin the evictions and to have the state laws declared unconstitutional.

All material facts are stipulated. For the purposes of testing the constitutionality of ORS 105.105 et seq., it is not necessary to decide whether the tenants'

grievances are well founded. We will assume that one or more may be. It is agreed that the plaintiffs have protested and have not paid to their landlords the rent required under the terms of their rental agreements. During the pendency of this action, the rent has been paid into escrow pursuant to a conditional order restraining evictions.

It is conceded that Oregon law makes no provision for the withholding of rent as a means by which an aggrieved tenant may bring economic pressure to encourage a landlord to perform his obligations under the rental agreement. The state Legislative Assembly could institutionalize "rent strikes" if it desired to do so, but it has not enacted such legislation. See Rent Withholding and the Improvement of Substandard Housing, 53 Calif. L.Rev. 304 (1965). The plaintiffs argue that, in the absence of remedial legislation, this court should create a comparable remedy.

A threshold inquiry concerns abstention. Unless this is a proper case for the intervention of a federal court, this court ought to stay its hand.

■ We have examined rent-law decisions from other three-judge courts in which abstention was practiced, and we have examined the authorities cited on both sides of the question in this case. We have concluded that we should not abstain.

The challenged statute is clear. It is unlikely that an application of state law would change the posture of the federal constitutional issues. No state administrative process is involved. The case has been thoroughly briefed and argued on the merits, and is presented on a clear and complete record. It is ripe for decision. Only one appeal (to the United States Supreme Court) will now be needed to settle the federal constitutional question. While the state courts are also capable of applying the United States Constitution to a challenged state law, two levels of appeal would be needed in an F.E.D. case within the state system. A final state-court decision would still not necessarily settle the federal constitutional question.

Closely related to the time element is economy. Cases of this sort tax both courts and counsel. Until finally resolved, these cases produce expense, uncertainty, and frustration. Delay produces no balancing benefit, either of comity or of clarity in state-federal relations. We are advised that similar cases are now pending or ready for filing in the courts of Oregon. The interests of justice will best be served by rendering a decision on the merits without further delay.

The plaintiffs attack ORS 105.105 to 105.160 on eight due-process and equal-protection grounds.

The thrust of the plaintiffs' combined attacks on the statutory scheme is that the loss of possession during litigation is basically unfair to the poor, because, as a practical matter, loss of possession makes illusory any legal redress for the evils of substandard housing.

The landlords argue that the judicial creation of a means for retention of possession *pendente lite* would put a tenant, once in possession, in a practical position to hold someone else's property rent-free while he argues in court about real or imaginary faults in the housing.

The question for decision is whether the competing policy choices involved in resolving this political-economic problem ought to be made in a legislative environment or in a court case between two sets of litigants.

A century ago the Oregon Legislative Assembly, presumably representing the people of the state, elected to place the possession of property in the hands of the property owner during litigation. It is not for this court to decide whether that choice was either wise or socially desirable. Our function is to decide whether that choice, in light of present federal constitutional standards, offends the Constitution of the United States.

If the Oregon statutory scheme is out of step with the supreme law of the land, then this court must strike down the

statute. If not, the people of Oregon remain free to enforce existing law or to debate and enact any other constitutional housing legislation that commends itself to them.

■ Plaintiffs first assert that F.E.D. pleadings under ORS 105.125(3) and (4) do not satisfy the fundamental notice requirements of due process as guaranteed by the Fourteenth Amendment to the United States Constitution. A companion assault on the pleading statute asserts that it denies F.E.D. defendants equal protection of the laws, because defendants are in greater need of information than are plaintiffs. Both contentions must fail unless the notice requirements are clearly unreasonable.

The pleadings required by the challenged statute are at least as informative as those required by the Federal Rules of Civil Procedure. While the state has not institutionalized the discovery procedures available under the Federal Rules, we do not find the notice requirements of ORS 105.125 to be unreasonably sparse in view of the nature of the typical F.E.D. case.

The adequacy of notice ought to be related functionally to the facts of the ordinary case. While there may be exceptional cases, the usual F.E.D. case is one in which the tenant, like a taxpayer, knows whether or not he has paid, how much he has paid, and, if he has not paid, why he does not think he should pay. Detailed notice in such cases tends to elevate form over substance. We hold that the notice requirements of the Oregon statute serve the purposes of procedural fairness.

■ The second ground of attack asserts that ORS 105.135 offends due process in providing an unreasonably short time in which a tenant must appear in court. We hold that the Legislative Assembly acted within its constitutional powers in requiring that F.E.D. cases be heard within four days, in light of the purposes of the statute and the practical considerations known to the Assembly when the statute was adopted. As noted above, a tenant knows in most cases whether or not he has paid his rent, and, if not, why not. The tenant would not be any the wiser if the law were to be rewritten to give him ten days' notice. We find nothing unconstitutional in the statutory time element.

■ A third attack asserts that ORS 105.140 violates due process because it requires tenants to post cash security for their rent as a condition prior to obtaining a continuance for a comprehensive defense to the F.E.D. action. The tenants, being poor, say that upon occasion this condition might be impossible to satisfy and that it therefore discriminates against the poor. It is, however, not unreasonable to require that a person whose eviction is sought for nonpayment of rent post security for the rent if he wishes to litigate the duty to pay. The landowner may also need money. There is no constitutional requirement that the owner allow a tenant to remain upon his land while he disputes in court the terms of the rental agreement. The challenged law does not deny the tenant access to the courts if he wishes to sue for a breach of contract or for other damages to which he might be entitled in an action at law. The F.E.D. statutes merely deny the tenant the power to hold the property while he engages in such litigation.

■ The plaintiffs contend that not all eviction cases arise out of nonpayment of rent, and argue that a month-to-month tenant ought to have protection against arbitrary eviction. Tenants who desire protection against arbitrary eviction may obtain it by entering into written leases. ORS 93.010, 93.020. Again, we know of no constitutional requirement that a landowner, whose tenant has not chosen to enter into a lease, must allow the tenant to remain on his land while suing the landowner for such transgressions as noncompliance with housing codes. While it may be competent for the legislature to make such a provision a part of the law of landlord and tenant, no constitutional requirement demands it.

■ A fourth ground of attack asserts that ORS 105.145 and 105.150 offend both due process and equal protection of the laws because these sections deny a tenant the opportunity to raise in an F.E.D. proceeding defenses he might raise in law or equity in nonpossessory proceedings. At issue here is not the right to litigate substantive disputes in a court of law, but, again, the policy question of the right to possession of property while disputes related to the property work their way through the courts. The Oregon legislature has made the choice in favor of the owner as against a nonpaying tenant. We do not believe this choice is so clearly unreasonable as to render the statute unconstitutional. The law must put someone in possession of property while legal disputes are resolved, and it is at least as reasonable to place an owner in possession of his land as it would be to place an avowedly hostile tenant in possession under circumstances that would leave the owner wholly unsecured in the event he should prevail in court.

■ The appeal provisions of the F.E.D. law (ORS 105.160) are challenged as unreasonably denying judicial review in violation of due process of law. This challenge presents perhaps the most difficult question in this case. The Oregon Supreme Court recently passed upon the same question, holding that the statute was not unconstitutional. Scales v. Spencer, 246 Or. 111, 424 P.2d 242 (1967). The statute provides that if a tenant ousted of possession in an F.E.D. proceeding desires to appeal to the Circuit Court he must post a bond for double the amount of rent that will accrue pending the appeal. To the contention that this statute singles out for discriminatory treatment the tenant of rental housing, the state court answered that, without a provision for some reasonable measure of liquidated damages (the doubled rent pending appeal), every ousted tenant would appeal, secure in the knowledge that he had nothing to lose thereby, as rent would be payable in any event. We agree with the state court

that the legislature had a rational basis for placing this type of appeal in a different category from other appeals in the state judicial system. The classification is not so unreasonable as to constitute a violation of the Fourteenth Amendment.

The remaining challenges of the statute are essentially similar to those discussed. Each picks out a section of the statutory scheme and asserts that it unconstitutionally discriminates against the poor because a rich person could remain in possession of the property and litigate with the landlord on more equal strategic footing than could a poor person after he has been dispossessed.

In fairness to the plaintiffs and their able counsel who presented this case, it must be acknowledged that the plaintiffs make a strong argument that the statute, as a whole, is more oppressive to the poor than a section-by-section analysis of its parts will demonstrate. This may be true, but, even so, the point does not establish unconstitutionality.

Many laws dealing with essentially economic matters may be oppressive to the poor. Poverty itself is so oppressive that legislative bodies spend a vast amount of their time and energy attempting to alleviate its burdens.

One currently active subject for legislative reform, for example, is the problem of enforcing city building and housing codes for the benefit of the poor. Without legislation, the poor cannot enforce such codes by the direct and practical device of the rent strike. The plaintiffs have not put forward, however, a valid reason for the judiciary rather than the legislative branch of government to make whatever changes may be socially desirable.

For the reasons stated, we fail to perceive a violation of the United States Constitution in Oregon's statutory scheme for the eviction of nonpaying tenants. The political and economic questions presented by these plaintiffs are all questions that can be resolved by the processes of representative govern-

ment. Such questions do not demand judicial solution at this time.

The defendants shall have judgment for their costs and disbursements. The Temporary Restraining Order is vacated and the escrow is ordered to distribute all rentals to the appropriate persons and close the escrow.